# EXHIBIT 5

# CHIMBUSCO PAN NATION PETRO-CHEMICAL COMPANY LIMITED

# TERMS AND CONDITIONS FOR PETROLEUM PRODUCTS SALES AGREEMENT

### Dated 13 April 2014

**1. APPLICATION OF TERMS AND CONDITIONS FOR SALE OF MARINE FUEL**

(a) These General Terms and Conditions ("these General Terms and Conditions") are deemed incorporated in each Confirmation Note, Invoice, Bunker Delivery Note, Tank Measurement Form, Bunker Requisition Form and together with these General Terms and Conditions constitute a complete and exclusive Agreement of Sale of Marine Fuel ("the Agreement of Sale of Marine Fuel") between Chimbusco Pan Nation Petro-Chemical Co. Ltd ("the Seller") and the party as defined in the Confirmation Note ("the Buyer") whether it is made as principals, agents, brokers, authorized representative or otherwise.

(b) Unless expressly accepted in writing by the Seller, terms and conditions by the Buyer and/or any other parties will not be binding on the Seller and that these General Terms and Conditions, including any revisions, shall prevail and be binding on the Buyer.

(c) In the event of any discrepancy between these General Terms and Conditions and the terms of the Confirmation Note, the terms of the Confirmation Note shall prevail.

**2. OFFERS AND QUOTATIONS**

(a) An Agreement of Sale of Marine Fuel shall only be binding on the Seller upon the issuance of the Confirmation Note and not otherwise.

(b) If the Buyer is not the Owner of the Vessel, the Seller shall have the right to insist as a precondition of sale that a payment guarantee is provided by the Owner of the Vessel. The Seller shall have the right to cancel any agreement with the Buyer at any time, if such payment guarantee is not received upon request thereof from the Seller to the Owner.

**3. PRICE AND CHARGES**

(a) Unless otherwise stated in the Confirmation Note, the price for the Marine Fuel set forth in the Confirmation Note shall be:
(i) payable in United States Dollars;
(ii) the price per metric ton for each grade of Marine Fuel specified in the Confirmation Note (in the event the price in the Confirmation Note is expressed in volume units, the price shall be converted to price per metric ton at sixty (60) degrees Fahrenheit or fifteen (15) degrees Celsius) multiplied by the applicable quantities of such grade of Marine Fuel, provided that any price specified in the Confirmation Note shall only be valid 7 Calendar Days (3 days before and 3 days after the vessel's ETA specified in the nomination) in which the Confirmation Note is issued and beyond such validity period, it is the Seller's option to adjust the price upward in parallel to the price frustration of the market; and
(iii) ex-wharf and excludes any charges for wharfage, barging, mooring or other similar charges.

(b) The Buyer shall pay any and all applicable duties and charges, whether or not specified in the Seller's quotation or the Confirmation Note, including but not be limited to:
(i) wharfage charges, barging charges or other similar charges; and
(ii) port duties, taxes, charges or other such costs levied by authorities in the place of delivery, incurred by the Seller for the Buyer's account.

(c) The Seller has the right to re-adjust the price, to negotiate a new price or to revoke the Agreement of Sale of Marine Fuel if the quantity required changes or, if there is a change to the quality or specification or when the Receiving Vessel's anticipated arrival date is delayed beyond seven (7) calendar days – as stated in (a)(ii) hereinabove.

## 4. DELIVERY

(a) Unless otherwise agreed by the Seller, the Buyer shall give the Seller at least seventy-two (72) hours notice of the delivery required.

(b) At least 48-eight (48) hours (Sundays and holidays excepted) before the Buyer requires delivery of the Product as defined in the Confirmation Note, the Buyer shall provide and offer to the Seller, (i) the exact location of the Receiving Vessel designated by the Buyer, (ii) the approximate time of tendering, (iii) any other necessary information as per the Seller requests.

(c) The obligation to delivery will only be binding on the Seller when the Buyer complied with its obligation in (a) and (b) above and not otherwise.

(d) Once the Confirmation Note has been issued, any changes or cancellation to delivery by the Buyer would entitle the Seller to charge including but not limited to barging and storage costs, and the price difference of the nominated quantity in parallel to the price frustration of the market between the date of confirmation and cancellation, at the sole discretion of the Seller without prejudice to any other rights, the Seller may have against the Buyer. The Buyer shall indemnify the Seller for any loss or damage suffered as a result of the alteration or cancellation.

(e) If the Seller provides the Buyer with a time of delivery, this will only by an approximate time, unless it has been otherwise specifically agreed in writing between the parties.

## 5. QUANTITIES AND MEASUREMENTS

(a) The quantity of Marine Fuel shall be those quantities specified in the Confirmation Note, subject to the availability of quantities and grades of such Marine Fuel on the date of delivery at the Delivery Location.

(b) Subject to the provisions of Clause 11 hereunder, the quantities of Marine Fuels delivered shall be determined from the official gauge or meter of the delivery Bunker Tanker at the Seller's election or the shore-meter in the case of ex-wharf delivery, measured and calculated according to the ISO-ASTM-API-IP Petroleum Measurement Tables. Quantity measured on Bunker Tanker is therefore considered as conclusive and binding to both the Buyer and the Seller.

(c) The Buyer and the Seller shall both have the right to be present or represented at such measurements of Marine Fuel, and shall be given sufficient information and access to the relevant gauge or meter and relevant documentation to verify the quantities delivered. If the Buyer is not present or represented at such measurements, then the Seller's determination of quantities shall be conclusive and binding on the Buyer.

(d) The Buyer shall be responsible to ensure that the bunker manifold of the Vessel into which the Marine Fuel is to be deposited is suitable in all respects and complies with all relevant regulations and is capable of accommodating the full quantity of Marine Fuel ordered by the Buyer.

(e) The Buyer must notify the Seller of any dispute in relation to the quantity delivered at the time of delivery in an appropriate Note of Protest, any remarks on the Bunker Delivery Note and Tank Measurement Form are deemed to be invalid. If the Buyer fails to present the Note of Protest any such claim shall be deemed to be waived and barred.

(f) Any claim as to short delivery shall be presented by the Buyer in writing within (15) days from the date of delivery, failing which any such claim shall be deemed to be waived and barred.

## 6. SAMPLING

(a) The Seller shall arrange for Four (4) representative samples of each grade of Marine Fuel, to be drawn throughout the transfer of such grade of Marine Fuel. The sampling shall where possible be performed in the presence of both the Seller and the Buyer or their respective representatives, provided that the absence of the Buyer or its representatives shall not prejudice the validity of the samples taken.

(b) The samples shall be drawn at a point at the Seller's election.

(c) The samples shall be drawn using a mutually accepted sampling device which shall be constructed, secured and sealed in such a way so as to prevent the sampling device and the sample being tampered with during the transfer of Marine Fuel to the Vessel's bunker manifold. If the Buyer does not express any request on sampling device, then the Seller's determination shall be conclusive and binding on the Buyer.

(d) The Four (4) samples of Marine Fuel drawn shall be sealed and labeled indicating the Vessel's name, delivery facility, product name and date of sampling and signed by the Seller's representative and the Master of the Vessel or its authorized representative. The samples with seal number marked on BDN are considered as the only valid trading samples.

(e) Two of the samples shall be retained by the Seller's after delivery of the Marine Fuel to the Vessel for approximately sixty (60) days, or upon request in writing by the Buyer for as long as the Buyer may reasonably require, or such period of time at the Seller's election and the other two sample shall be retained by the Vessel.

(f) If the Marine Fuel is delivered by more than one Bunker Tanker, the sampling procedure shall be repeated as outlined in this Clause 6.

(g) The samples stated above shall be conclusively deemed to be representative of the quality of the Products supplied to the Vessel. Any samples drawn from the Vessel's tanks shall not be valid as an indicator of the quality supplied.

## 7. DELIVERY TERMS

(a) Wherever logical in connection with vessel operations or performance under the Agreement of Sale of Marine Fuel the Receiving Vessel also includes the Receiving Vessel's owner(s), operator(s), captain or master, pilot(s), tankermen, other officers, and crew, line handlers and agents. If an agent purchases the Product on behalf of an undisclosed principal, as Buyer, the agent and Buyer will be jointly and severally responsible for all obligations under the Agreement, including, without limitation, payment for the Product delivered.

(b) The Buyer shall ensure that the Vessel is in possession of valid licenses, permits and certificates required by relevant regulations pertaining to delivery to, storage and use of the Marine Fuel and that the Master of the Vessel shall ensure that the Vessel has a free side clear of obstructions to allow safe and proper mooring of the Bunker Tanker to deliver the Marine Fuel, and render all necessary assistance which may reasonably be required to moor and unmoor the bunker tanker.

(c) In the case that the Receiving Vessel is not able to receive the delivery promptly, the Buyer shall pay demurrage to the Seller at the Seller's established rates and reimburse the Seller for all other expenses in connection therewith.

(d) The price and charges referred to in the Agreement of Sale of Marine Fuel do not include any insurance against the risk of loss or damage to the Seller's Product or property. It is expressly understood and agreed that the Buyer will carry its' own insurance at its' own expense for the protection of Seller's Product and property and to the property of Seller's supply port. All vessels, barges, trucks, or other modes of transportation selected by the Buyer shall maintain proper insurance coverage with reputable insurance companies licensed to do business in Hong Kong where the Seller's supply port is located at no cost to Seller a certificate of insurance will be provided to this effect.

(e) The Receiving Vessel shall moor, unmoor, hoist bunkering hose(s) from the barge(s) respectively lower hose(s) whenever required by the Seller or the Seller's agent, brokers or authorized representative, free of expenses, and in any way requested to assist barge equipment to a smooth supply. The Buyer shall be responsible for all connections and disconnections between the delivery hose(s) and the Receiving Vessel's bunker intake manifold/pipe and ensure that the hose(s) are properly secured to the Receiving Vessel's manifold prior to commencement of delivery.

(f) If the Buyer for whatever reason is unable to receive the full quantity of Marine Fuel ordered and rendered, the Seller shall have the right to invoice the Buyer for the loss incurred by having to transport the Bunkers back to the storage or by having to sell the bunkers in a degraded form at a lower price than that applicable to the grade originally nominated by the Buyer.

## 8. TITLE – RISK OF LOSS

(a) Risk in the Marine Fuel shall pass to the Buyer once the Marine Fuel passed the Seller's flange connecting the Receiving Vessel's bunker manifold with the delivery facilities provided by the Seller. The Buyer shall assume all risk of loss, damage, deterioration or evaporation as to the Marine Fuel delivered.

(b) Title in and to the Marine Fuel delivered and/or property rights in and to such Marine Fuel shall remain vested in the Seller until full payment has been received by the Seller of the agreed price together with all interest, cost and expenses due. Until full payment is made, the Buyer and/or the Receiving Vessel are in possession of the Marine Fuel solely as bailee for the Seller.

(c) If, prior to full payment, the Marine Fuel delivered by the Seller to the Receiving Vessel is commingled with other marine fuel, the Seller shall have title to such quantities of such commingled marine fuel which correspond to the quantities of Marine Fuel delivered to the Receiving Vessel. The above is without prejudice to such other rights the Seller may have against the Buyer and/or the Receiving Vessel in the event of non-payment, including the right to attach the Receiving Vessel and/or its sister vessel and/or any other assets of the Buyer (or the Owner of the Vessel, including the Disponent Owner) wherever situated in the world without prior notice.

(d) The Sale of Marine Fuel shall be made on the credit of the receiving vessel as well as on the credit of the buyer, and the Seller shall have and may assert a lien against such receiving vessel for the invoiced amount resulting from delivery of the Marine Fuel. Further, the Seller shall have and may assert a lien for the invoice amount of the Marine Fuel against such receiving vessel if the laws applicable at the place of delivery of Marine Fuel or at the place of arrest of the receiving vessel grant or recognize a lien for Marine Fuel delivered to the vessel.

(e) All costs and expenses (including legal costs on a full indemnity basis) in connection with the enforcement of the Seller's title or lien to the Marine Fuel shall be for the account of the Buyer. The taking of any advance payment or security by the Seller does not, in any event, operate as a waiver of any of the Seller's rights under this Agreement of Sale of Marine Fuel.

## 9. PAYMENT

(a) Unless otherwise stated in the Confirmation Note, the Buyer shall pay the Seller for the Marine Fuel delivered at the price and in accordance with the instructions set forth in the Confirmation Note within thirty (30) days after completion of delivery of the Marine Fuel to the Receiving Vessel, notwithstanding any disputes or claims.

(b) Subject to Clause 25 of these General Terms and Conditions, payment shall be made in full, without any set-off, counterclaim, deduction, withholding or discount and free of bank charges.

(c) The Buyer shall pay interest on any overdue payment at the rate of the Hong Kong Dollar Prime Rate of HSBC plus two (2%) per cent per annum, from the payment due date to the actual payment date.

(d) Without prejudice to any other rights of the Seller, the Seller shall be entitled to modify or terminate any credit arrangements extended to the Buyer, to withhold any deliveries confirmed by the Confirmation Note if, upon demand by the Seller, the Buyer failed to pay any overdue payment or that the Buyer exceeded the credit limit granted by the Seller.

(e) The Seller shall be entitled to require the Buyer to provide proper and adequate security for the performance of its obligations to deliver the Marine Fuel at any time.

(f) Notwithstanding any agreement to the contrary, payment will be due immediately in case of bankruptcy, liquidation or suspension of payment or comparable situation of the Buyer, or arrest on assets and/or claims of the Buyer, or in case of any other situation, which in the sole discretion of the Seller, is deemed to adversely affect the financial position of the Buyer.

(g) If payment falls on a non-business day, payment shall be made on or before the business day prior to the due date.

(h) The liquidated damages would be enforceable against the Buyer as a debt and that the Buyer would also be liable to the legal costs and expenses incurred by the Seller in the enforcement.

## 10. DELIVERY DOCUMENTATION

(a) Upon the Seller's tender of the Marine Fuel and before commencement of the delivery, authorized personnel of the Receiving Vessel shall sign on the Bunker Requisition Form, tank measurement form, and any other related document upon gauging before pumping.

(b) Upon completion of the delivery and prior to disconnecting the transfer hose, authorized

personnel shall sign on the Tank Measurement Form and Bunker Delivery Note.

## 11. PRODUCT QUALITY AND CLAIMS

(a) The Seller warrants that the Marine Fuel delivered under the Agreement of Sale of Marine Fuel meets the specifications for the Product as set forth in the Confirmation Note, subject to variance.

(b) In the event that the Buyer is not satisfied with the quality of the Marine Fuel delivered, he shall make an appropriate Note of Protest, any remarks on the Bunker Delivery Note and Tank Measurement Form are deemed to be invalid. And the Buyer shall formally confirm such claims to the Seller within twenty-one (21) days from the date of delivery. If any claim is not made in accordance with the foregoing procedure and within the time limit stipulated herein, it will be deemed waived by the Buyer and that the Buyer's right to such claims would be extinguished.

## 12. BROKERS AND AGENTS

(a) Unless the party with whom the Seller is corresponding specifically declares to the Seller prior to dispatch by the Seller of the Confirmation Note that, the party with whom the Seller is corresponding is not the Buyer at the same time provides to the Seller the full name and address of the Buyer, then the party with whom the Seller is corresponding shall be deemed to be the Buyer.

(b) Without prejudice to the provisions of Clause 10 in the event that the party with whom the Seller is corresponding is a/an broker/agent /ship-owner of the Buyer, then the party with whom the Seller is corresponding shall be jointly and severally liable with the Buyer to perform the Buyer's obligations under the Agreement notwithstanding that the party with whom the Seller is corresponding purports to contract as a mere broker/agent/ship-owner.

## 13. WARRANTIES AND DISCLAIMER

(a) Notwithstanding anything in these Terms and Conditions to the contrary, the Seller makes no representations or guarantees pertaining characteristics, environmental or human safety or hazard or health effects or like matters.

(b) Whilst the Seller warrants that each grade of Marine Fuel supplied hereunder shall be of merchantable quality, there is no implied condition or warranty that the Marine Fuel supplied hereunder shall be reasonably fit or suitable for the purpose intended by the Buyer.

(c) The Seller makes no other warranties, express or implied including without limitation, any warranty or merchantability, or that the Marine Fuel delivered under the Agreement of Sale of Marine Fuel is fit for a particular purpose, even if known to the Seller.

## 14. POLLUTION PREVENTION, SAFETY AND RESPONSIBILITY

(a) In the event that the Marine Fuel is spilled or otherwise escaped during the loading or discharging of any Receiving Vessel in the performance of Agreement of Sale of Marine Fuel, the Buyer shall take such measures as are necessary to protect against or mitigate any resulting pollution damage or as required by any governmental authorities.

(b) In the event such incident is the result of any defect in the Receiving Vessel or its equipment or any fault or act of neglect of the master, crew, agent or representative, the party owning or chartering the Receiving Vessel agrees to cause the Receiving Vessel to assume any and all

responsibility for penalties, cleanup expenses, and cost that may be incurred as a result of such incident.

(c) The Buyer agrees to indemnify and hold harmless the Seller from any claims resulting from petroleum spills, environmental damage, accidents or any other tortuous behavior resulting from the actions or failure to act of the Buyer or any of the Buyer's employees, agent, brokers or authorized representative.

## 15. VESSEL SEAWORTHINESS

The Buyer represents that the Receiving Vessel is seaworthy, safe and in good condition and is capable of receiving the Marine Fuel without leakage or spillage. Should the Receiving Vessel fail to comply with the foregoing representation, the Seller may suspend the delivery of the Marine Fuel until such time as the Seller received evidence satisfactory, in its sole discretion that the Receiving Vessel adequately complies with these representations. If the Receiving Vessel is unable to comply with such requirements, the Buyer shall be deemed in breach of the Agreement of Sale of Marine Fuel and the Seller may declare a default thereunder and terminate the Agreement.

## 16. LIQUIDATED DAMAGES – BUYER'S DEFAULT

In the event the Buyer defaults on its obligation to take delivery of the Marine Fuel under the Agreement of Sale of Marine Fuel, in whole or in part, the Seller, in lieu of seeking other damages or remedies under the Agreement of Sale of Marine Fuel or at law or equity, may require Buyer to pay liquidated damages in full and final settlement of all the Seller's claims against Buyer arising from Buyer's breach of the Agreement of the Sale of Marine Fuel, including but not limited to barging and storage costs, and the price difference of the nominated quantity in parallel to the price frustration of the market between the date of confirmation and cancellation, at the sole discretion of the Seller without prejudice to any other rights the Seller may have against the Buyer.

## 17. FORCE MAJURE

(a) Neither the Buyer nor the Seller nor its Supplier shall be responsible for damages caused by delays, failure to perform in whole or in part any obligation hereunder (other than the payment of money), or non-compliance with any of the terms hereof when such delay, failure or non-compliance is due to or results from causes beyond the reasonable control of the affected party, including, without limitation, acts of God, fires, floods, perils of the sea, war (declared or undeclared), embargoes, accidents, strikes, labor disputes, failure or shortage of vessel or barge service normally available to the Seller or its Supplier, to breakdown of or damage to, or shortage in facilities used for production, refining or transportation of Product, acts in compliance with requests of any governmental authority or person purporting to act therefore, or any other similar causes. The expression "or any other similar causes" is deemed to include, without limitation, the failure, cessation, termination or curtailment of any of the existing or contemplated sources of Product of the Seller. Neither Party shall be required to settle any labor dispute against its will.

(b) The Seller shall not be required to make up any deliveries and the Buyer shall not be liable to accept any deliveries of the Product excused due to occurrence of any event of *force majeure.*

## 18. INSURANCE

The Buyer is responsible for effecting and maintaining in force adequate insurance which will

fully protect the Buyer, the Seller, their agents, brokers and authorized personnel and all third parties from all risks, hazards and perils associated with or arising from the Agreement of Sale of Marine Fuel and the actual delivery of the Marine Fuel.

## 19. DELIVERY BY INSTALMENTS

Unless provided otherwise in the Confirmation Note, each delivery of the Marine Fuel is deemed to constitute a single contract. Time is of the essence under the Agreement of Sale of Marine Fuel and if the Seller is authorized in the Confirmation Note to deliver the total quantity of the Marine Fuel in separate lots, amounts or installments (each an "Installment") at different times and the Buyer fails to take delivery of any such Installment, in whole or in part, at the time it is to be delivered, such default in taking delivery with respect to such Installment is deemed to impair the value of the whole Agreement of Sale of Marine Fuel and the Seller may consider such default a breach of the Agreement of Sale of Marine Fuel and provide the Buyer written notice thereof.

## 20. LIMITATION OF LIABILITY

(a) In no event shall the Seller be liable to the Buyer for any incidental, consequential or punitive damages. The Seller shall furthermore not be liable for damages as described above when such damages have been caused by the fault or negligence of its personnel, representatives and/or (sub) contractors.

(b) The Buyer's exclusive remedy for any losses or damages resulting from the sale of the Marine Fuel delivered under the Agreement of Sale of Marine Fuel, including but not limited to any allegation of breach of warranty or breach of contract or negligence or strict liability, shall be limited to the price of the Marine Fuel, for which a claim is submitted.

(c) The Seller shall not be liable for any demurrage or loss incurred by the Buyer due to congestion affecting the Seller's prior commitment of bunkering barge, or for any other reasons.

## 21. REIMBURSEMENT OF LEGAL COSTS

If any action, at law, in equity or in admiralty, is brought by the Seller, either under the provisions of these Terms and Conditions of Sale or to enforce the Buyer's contractual obligation arising from the Agreement of Sale of Marine Fuel or, enforcement of the Seller's right under these Terms and Conditions, the Seller shall be entitled to recover its legal costs, on an indemnity basis, from the Buyer.

## 22. NOTICES

All notices and communications under these Terms and Conditions and/or the document under the Agreement of Sale of Marine Fuel must be in writing, be made to the addresses, whether physical or electronic, as specified in writing by each Party to the other from time to time, and will be deemed given to a Party, (I) if delivered by hand or sent by overnight carrier, on the day of receipt by the receiving Party, (ii) if sent by registered or certified mail return receipt requested, on the date of receipt, or (iii) if transmitted by electronic mail or facsimile, at the time of confirmation of transmission.

## 23. ASSIGNMENT AND NO WAIVER

(a) The Buyer may not assign its rights or delegate its performance under the Agreement of Sale of Marine Fuel without the prior written consent of the Seller, which consent shall not be unreasonably withheld, conditioned or delayed.

(b) Any assignment made without obtaining such prior approval shall be void and of no effect.

(c) The Buyer's consent shall not be required for the assigning Party to transfer its interest in the Agreement of Sale of Marine Fuel to a parent or affiliate by assignment, merger, or otherwise.

(d) Upon any transfer and assumption of the Agreement of Sale of Marine Fuel by either Party, the Buyer shall not be relieved of or discharged from any obligations under the Agreement of Sale of Marine Fuel unless the assignee or transferee (i) has assumed in writing all of the obligations of the transferring Party and (ii) provides the consenting Party evidence of financial responsibility at least equal to that of the transferring Party.

(e) No waiver by the Buyer of any provision of the Agreement of Sale of Marine Fuel shall be binding unless made expressly and expressly confirmed in writing. Furthermore, any such waiver shall relate only to such matter, non-compliance or breach as it expressly relates to and shall not apply to any subsequent or other matter, non-compliance or breach.

## 24. INDEMNIFICATION

The Buyer agrees to indemnify, defend and hold harmless the Seller from and against any penalties. Fines, liabilities, claims, expenses (including attorney's fees and costs of defense), losses and damages (i) caused by the negligence or willful misconduct of the Buyer, its employees, agents, brokers, authorized representatives or subcontractors, including without limitation, those of the Receiving Vessel, in the course of its performance of the Agreement of Sale of Marine Fuel and (ii) failure of the Buyer, its employees, agents, brokers, authorized representatives or subcontractors to comply with all applicable laws, ordinances, rules and regulations of any government or agency having jurisdiction, except to the extent cause by the negligence, willful misconduct or omission of the Buyer, its officers, employees, agents, brokers, authorised representatives or subcontractors. In addition to the other obligations that a Party may assume under the terms of the Agreement, each Party shall obtain insurance covering its indemnity hereunder to the extent permitted by law.

## 25. SET-OFF

(a) The Seller may at any time set off any liability of the Buyer to the Seller against any liability of the Seller to the Buyer, whether either liability is present or future, liquidated or unliquidated, consists of principal sum and/or interest, and whether the liabilities arise under the same or different agreements between the Seller and the Buyer, whether with a third party or otherwise. If the liabilities to be set off are expressed in different currencies, the Seller may convert either liability at a market rate of exchange for the purpose of set-off. Any exercise by the Seller of its rights under this Clause shall not limit or affect any other rights or remedies available to the Seller under these General Terms and Conditions or otherwise.

(b) The Seller is not obliged to exercise its rights under this Clause, but if the rights are exercised, the Seller shall promptly notify the Buyer of the set-off that has been made.

(c) Any deduction or set-off made in accordance with this Clause shall constitute full and final discharge of the Seller's obligations to the Buyer and of the Buyer's obligations to the Seller, in respect of the amount so deducted or set-off. Save for the amount so deducted or set off, all other obligations between the Seller and the Buyer shall remain in full force and effect.

## 26. OVERSEAS BUNKER SUPPLY

(a) Any bunker supply delivered outside Hong Kong ("overseas bunker supply") shall be subject to

additional conditions of the designated port as set out in Appendix of these General Terms and Conditions and operation condition of the local supplier(s)

(b) The obligation to delivery will only be binding on the Seller when the Buyer has complied with the conditions of the designated port.

(c) The Seller and local supplier(s) shall have the right to change the conditions without prior notice.

(d) In the event of any discrepancy between these General Terms and Conditions and the conditions in Appendix, the conditions in Appendix shall prevail.

## 27. GOVERNING LAW

(a) This General Terms and Conditions and the Agreement shall be governed by and construed in accordance with the laws of Hong Kong Special Administrative Region (Hong Kong) and the parties hereby agree to submit to the exclusive jurisdiction of the Hong Kong Courts.

(b) All Claims of the Buyer shall be time barred unless legal proceedings have been commenced before the competent court within 12 (twelve) months after the date of delivery or the date that delivery should have been made.

## 28. MISCELLANEOUS

(a) **Severability** - If any provision of the Agreement of Sale of Marine Fuel is determined to be invalid, void or unenforceable by any court having valid jurisdiction, such determination shall not render invalid, void, or render unenforceable any other provision, agreement or covenant of the Agreement.

(b) **Waiver** - No waiver of or failure to enforce any breach of or performance required by the Agreement shall be deemed to constitute a waiver of any other or subsequent breach or required performance under the Agreement.

(c) **Amendment** - No amendment or modification of any of these Terms and Conditions and the terms of the Agreement of Sale of Marine Fuel shall be enforceable unless reduced to writing and executed by both the Seller and the Buyer.

(d) **Compliance with Law** – Both the Seller and the Buyer shall undertake such action as may be necessary to assure that it and all its employees, agents and independent contractors comply with all applicable laws, ordinances, rules and regulations and by any government entity or agency having jurisdiction with regard to such Party's performance under the Agreement.

(e) **Agreement of Sale of Marine Fuel** – These General Terms and Conditions are deemed incorporated in each Confirmation Note, Invoice, Bunker Delivery Note, Tank Measurement Form, Bunker Requisition Form and together with these General Terms and Conditions constitute a complete and exclusive Agreement of Sale of Marine Fuel. The Agreement constitutes the entire Agreement between the Parties regarding the subject matter thereof and supersedes and renders void any and all prior representations, statements, and proposals by or discussions, negotiations and agreements whether written or oral, between the Parties with respect to the subject matter of the Agreement.

(f) **Appropriate Note of Protest** – Any complaints in relation to the quantity or quality of Marine Fuel or any other disputes whatsoever have to be presented to the Seller in writing and must be supported by proper evidence.

# Appendix

## Additional conditions for Overseas Bunker Supply

The additional conditions set out below for different ports form an integral part of and are incorporated into the General Terms and Conditions.

### 1. CHINA

Following conditions to apply:

(a) Plus barging USD 5.00-12.00/MT generally, min 100 MTS per grade. Higher barging may be applied at some ports which, when incurred, will be for buyers' account.
(b) Plus surcharge of 50% over normal barging for deliveries during public holidays including but 'not limited to' : New Year day(1st Jan), Chinese New Year period, Qing Ming Festival period, Labour Day period, Dragon-boat Festival period, Mid-autumn Festival period and National Day period (1st-3rd Oct).
(c) Deliveries are subject to local reconfirmation and are to be made on best endeavor basis.
(d) Cancellation after nomination for whatsoever reasons will be subject to penalty charges.
(e) Supplier will reserve their rights to determine the supply when the stem for subject nominated vessel's eta is in 3 days (72hrs) delayed and/or in advanced.
(f) Local supplier specification to apply, of which is ISO8217 2005 standard.
(g) For all delivery at shipyards, we/local suppliers are strongly insisted buyer to appoint a bunker surveyor to conduct bunkering survey which the soundings of supply barges are for final and binding. Any other measurements are not accepted.

### 2. Hong Kong SLA

Following conditions to apply:

(a) Local agent/Master must give ETA notice 72/48/24/12 hours prior to arrival to our email address ops@chim-pn.com / tel 852-60386783 (24hrs). Failing which, delivery will be made on best endeavor basis.
(b) Delivery is always subject to weather permitting, the decision of supply will rest fully on the barge master's discretion on consideration of sea safety.
(c) For supply during typhoon season in harbour and/or sla:
(i) Due to typhoon seasonal periodicity, delivery will strictly depend on the development of the weather condition. The decision of supplying will rest fully on the barge master's discretion in consideration of sea safety.
(ii) Once typhoon signal is raised which the announcement is made by Hong Kong Observatory, all the bunker supply will be ceased. The resume of supply will be made on best endeavor after the typhoon.
(iii) No claims shall be raised against the suppliers for any demurrage which may cause to the vessel.

### 3. Indonesia

Following conditions to apply:

(a) No warranty for compliance to MARPOL VI.
(b) Final grade and quantity must be made upon nomination.
(c) Deliveries are subject to local reconfirmation and are to be made on best endeavor basis.
(d) Suppliers will not be liable for demurrage or loss or damage of whatsoever nature which may be suffered by the vessel/buyers as a result of unsuccessful or incomplete delivery.
(e) Delivered quantities are to be based on supply measurement devices. Claims on quantity based on

  measurement of the receiving vessel would not be accepted.
(f) Stem/order cancellation after nomination will be subject to penalty charges.
(g) Local suppliers' specification to apply.

### *4. Japan*

Following conditions to apply:

(a) Plus oil fence and other charges at cost for buyers account if applicable.
(b) Stem/order cancellation after nomination, any change of nominated grades/quantities, and in whatsoever reason, a strictly penalty will be incurred and is for vessel/buyer's account.

### *5. Korea*

Following conditions to apply:

(a) Plus barging USD 300.00 lumpsum for nominated/supplied quantity is less than 100 mt for supplying at Inchon, Ulsan, Busan.
(b) Higher barging charges will be for the rest of Korean Ports.

### *6. Philippine*

Following conditions to apply:

(a) Taxes are charged depending on the registry of vessel. Please confirm vessel's registry upon nomination.
(b) Plus other charges for buyers account if applicable.
(c) Final grade and quantity must be made upon nomination.
(d) Deliveries are subject to local reconfirmation and are to be made on best endeavor basis.
(e) Delivered quantities are to be based on supply measurement devices. Claims on quantity based on measurement of the receiving vessel would not be accepted.
(f) Stem/order cancellation after nomination will be subject to penalty charges.
(g) Local suppliers' specification to apply.

### *7. Singapore*

Following conditions to apply:

(a) Delivery is in accordance with the code of practice for bunkering (SS600:2008) with the maritime and port authority of Singapore (MPA)
(b) No DNV / Maritec / Orion / Duthanne / Viswa / Andre Moore / Lintec / Richie Bisset on board.

### *8. Taiwan*

We are pleased to offer as follow:

"At fixed price equal to CPC'S posted price (PP) prevailing on date of nomination being passed by us to CPC. Posted price of the next working day will apply for nomination, which is received after xxxx hrs Taipei time."

| GRADES | | QUANTITY (MTS) | PRESENT PP (USD/MT) | REBATE (USD/MT) |
|---|---|---|---|---|
| IF380 | (OR LIGHER GRADE) | | | |
| IF180 | (OR LIGHTER GRADE) | | | |
| MDO | | | | |
| MGO | (BY RTW IN TAICHUNG & SUAO) | | | |

Following conditions to apply:

(a) Please confirm exact grades/quantity upon nomination. Reduction on quantity and or cancellation after nomination will be subject to penalty charges.
(b) Delivery is strictly to local reconfirmation and agent's best co-ordination with CPC.
(c) Delivery quantity shall be based on flow-meter reading of supplier's apparatus which is approved by Taiwan provincial inspection institute of weights and measures. In the event of a dispute on quantity, CPC has the right to appoint a reputable surveyor to verify the quantity without notice to the buyer. The cost of the survey shall be borne by the party at fault.
(d) Qualities as per CPC's specifications. Result of analysis conducted on the supplier's retained sealed sample by an independent surveyor in Taiwan appointed by CPC shall be final and binding for any quality complaints.
(e) The delivery order is valid for 11 days from date of CPC's acceptance of bunker order. Price is subject to change should delivery slips beyond said validity.
(f) CPC terms and conditions shall prevail where and to the extent of any inconsistence with our sales terms and conditions.

## 9. Vietnam

Following conditions to apply:

(a) Upon nomination, please provide with following information: flag, port of registry, call sign, loa, dwt, nrt, grt, class, power and ownership.
(b) No warranty for compliance to MARPOL VI.
(c) Final grade and quantity must be made upon nomination.
(d) Deliveries are subject to local reconfirmation and are to be made on best endeavor basis.
(e) Delivered quantities are to be based on supply measurement devices. Claims on quantity based on measurement of the receiving vessel would not be accepted.
(f) Stem/order cancellation after nomination will be subject to penalty charges.
(g) Local suppliers' specification to apply.